IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WILLIAM JOSEPH SAFFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| B.J. BARNES, Individually and ) | |
| in his official capacity as ) | |
| duly elected Sheriff of ) | 1:14cv267 |
| Guilford County, North ) | |
| Carolina; and M.B. STEWART, ) | |
| Individually and in his ) | |
| official capacity as a Deputy ) | |
| Sheriff of Guilford County, ) | |
| N.C., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff William Joseph Safford brings suit against Defendants B.J. Barnes, Sheriff of Guilford County, and M.B. Stewart, a Deputy Sheriff of Guilford County, who allegedly violated Safford's constitutional rights when removing him from a courtroom gallery during proceedings in State court. Before the court is Defendants' motion for summary judgment. (Doc. 28.) In a June 2, 2016 order, this court granted Defendants' motion for summary judgment in part and reserved ruling on certain issues.[1]

---

[1] The court granted summary judgment on the State-law claims against Sheriff Barnes and Deputy Stewart in their official capacities. (Doc. 46 at 7.) The court also gave Safford ten days to show why any federal official capacity claim "survives on the current record." (Id.) Safford filed a timely response (Doc. 47), and Defendants subsequently moved to strike Safford's response (Doc. 48). Safford's response to the motion

(Doc. 46.) The court will now address Defendants' motion for summary judgment on the federal and State-law claims against Deputy Stewart in his individual capacity. Because the court finds that genuine disputes as to material facts exist, Defendants' motion for summary judgment as to these claims will be denied.

I. BACKGROUND

On March 30, 2011, Safford was in courtroom 1-C of the Guilford County Courthouse in Greensboro, North Carolina, awaiting the calling of a criminal case against him in District Court. (Doc. 28-1 at 4.) As viewed from the rear of the courtroom, he was seated with his wife on the front left bench near the center aisle. (Id. at 6; Doc. 29 at 2.) At some point during court proceedings in another case, Safford, who is disabled, stood up to ease a spasm in his back. (Doc. 28-1 at 7.) Using his cane for support, he wiggled his leg in an attempt to relieve the spasm. (Id.) Deputy Stewart, who was acting as courtroom bailiff for the sheriff's office, saw Safford standing and approached him after a few minutes. (Doc. 29 at 2.) An incident ensued that culminated in Safford's removal and arrest. The parties have presented contrasting evidence of how this came to pass.

Safford claims that Deputy Stewart walked up to him and asked

---

to strike is not due until July 8, 2016, the same day as the scheduled settlement conference (Doc. 45). Accordingly, the motion to strike and the fate of any federal official capacity claim will not be resolved until after that time.

what was wrong. (Doc. 28-1 at 7.) Safford told the deputy that he was having a back spasm and that he is disabled. (Id.) Deputy Stewart directed Safford to either sit down or go into the hallway to stand. (Id. at 8.) Safford replied that if moved he would fall. (Id.) At this point, Safford's face was pointed down toward his cane. (Id.) Deputy Stewart then, in a "buff" voice, told Safford "you're going to sit down or either you're going out here in this hallway." (Id.) Safford looked at Deputy Stewart and said, "I'm going to sit down." (Id.) As Safford proceeded to do so with the assistance of his wife, the deputy grabbed him by his shoulder and said, "F that, no, you're going out now." (Id. at 8-9.) Deputy Stewart then forced Safford's left arm behind his back, to his neck, and proceeded to drag Safford down the aisle of the courtroom toward the exit, all while Safford dragged his cane and yelled that he is disabled. (Id. at 8-10.) Safford claims that he never struggled or resisted. (Id. at 12.) When the deputy got Safford out the door, he slammed Safford against a brick wall outside of the courtroom. (Id. at 16.) Safford observed another officer, Deputy Steve Phillips, assisting Deputy Stewart. (Id.) Safford was ordered to put his hands behind his back, but he told the deputies that he had already done so. (Id. at 18.) Safford was eventually forced to the ground and arrested. (Id. at 17-19.)

Deputy Stewart offers a very different version. He claims that when he initially asked Safford why he was standing, Safford

3

replied that he needed to speak with one of the Assistant District Attorneys. (Doc. 29 at 2.) Deputy Stewart politely told Safford that he would need to sit down and wait to be called, to which Safford hostilely replied, "I ain't sitting down; my back hurts." (Id.) Deputy Stewart then told Stewart that "he needed to sit down but, if his back hurt and he wished to stand, that he could move to the rear of the courtroom where he could remain standing." (Id.) He repeated these instructions several times, but Safford refused to follow them. (Id. at 2-3.) After several requests, Safford responded by cursing in an angry voice, "F\*\*K you." (Id. at 3.) Safford then pushed Deputy Stewart "in the chest with both of his hands and sat down abruptly on the bench." (Id.) The force was sufficient to cause Deputy Stewart to move one step backwards. (Id.) Deputy Stewart then informed Safford that he "had to stand up and leave the Courtroom immediately because" he was going to be arrested for "resisting, delaying and/or obstructing an Officer." (Id.) Safford refused to comply and said, "F\*\*K you. I'm not going anywhere!" (Id.) Believing it was not safe to leave Safford in the courtroom, Deputy Stewart then grabbed Safford by his arm and attempted to pull him off the bench. (Id. at 4.) Safford physically resisted this effort. (Id.) Deputy Stewart eventually removed Safford from the bench, got him to his feet, and moved him into the center of the aisle. (Id.) Safford continued to resist. (Id.) While Deputy Stewart was escorting Safford toward the door

4

at the rear of the courtroom, Deputy Phillips came to assist him. (Id.) The deputies then moved Safford toward the door. (Id.) Throughout this process, Safford resisted by "jerking his upper body back and forth . . . planting his feet and locking his legs." (Id.) Safford was very strong, making the deputies' task "extremely difficult." (Id.)

Once Safford was outside the courtroom, the deputies "steered [him] up against a wall" and repeatedly instructed him to stop resisting and place his hands behind his back. (Id. at 5.) Safford refused to comply and instead "pushed his arms and hands down toward his sides and the front of his body to prevent [the deputies] from gaining control." (Id.) "At no time was the Plaintiff ever slammed into a wall." (Id.) Believing that Safford could not be handcuffed without taking him to the ground, Deputy Stewart then told Deputy Phillips to help him take Safford to the floor. (Id.) Safford responded by using his "upper and lower body strength to remain on his feet," but the deputies eventually got him to the floor. (Id.) Safford continued to resist on the ground but eventually complied and allowed himself to be handcuffed once Deputy Phillips removed his Taser from its holster. (Id.) Deputy Stewart claims that he never "grabbed [Safford] by his handcuffs and pulled his wrists up toward his neck." (Id.)

Both Safford and Deputy Stewart have witnesses who support their version of events. Deputy Phillips has testified to Deputy

5

Stewart's sequence of events, with the caveat that he does not say that Safford pushed Deputy Stewart. (Doc. 31 at 2.) Instead, he says Safford grabbed Deputy Stewart's arm in an aggressive manner. (Id.) Then Assistant District Attorney David L. Gore, III, who was standing approximately twenty feet away, testified that he saw Safford "lightly push Deputy Stewart." (Doc. 32 at 2.) Judge Susan E. Bray, who was presiding at the time, did not observe the initial sequence of events but testified that Safford did "not go willingly" when the deputies were taking him out of the courtroom. (Doc. 28-2 at 7.)

Safford's wife, Kandi Safford, supports his version of events. (Doc. 39-9 at 2-3.) She was seated next to Safford and testified that he never pushed the deputy and that he was in the process of sitting when he was grabbed. (Id.) Raymond Torain, a bystander seated "to the right and rear of Mr. Safford across the aisle . . . [and] three rows back," testified that Safford never cursed or pushed Deputy Stewart and seemed to be in the process of sitting down when the deputy "grabbed him by the arm and chicken-winged it high up behind his back." (Doc. 39-3 at 3.)

Both sides have enlisted experts to evaluate whether the use of force and arrest were justified. However, both experts principally rely on their party's version of events in forming their opinions. (See Doc. 39-5 at 34; Doc. 33-3 at 8.)

6

There is also surveillance video of the events that occurred outside of the courtroom. There is not, however, any video footage of the critical moments inside the courtroom. In fact, despite moving for summary judgment, Defendants acknowledge that Safford's testimony that he did not push Deputy Stewart "raises a genuine issue of material fact on this issue alone." (Doc. 34 at 22.)

**II. ANALYSIS**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The court is not permitted to weigh the evidence, assess credibility, or resolve issues of fact. Id. at 255. The law preserves these core jury functions for trial because "it is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." Adickes v. S.H. Kress & Co, 398 U.S. 144, 176 (1970).

7

## A. Fourth Amendment Individual Capacity Claims

Safford claims that his arrest was not supported by probable cause and that the force used to effectuate it was excessive. Deputy Stewart defends on the basis of qualified immunity.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Brown v. Gilmore, 278 F.3d 362, 366-67 (4th Cir. 2002) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Officers are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). A violation of a clearly established statutory or constitutional right will not exist unless "existing precedent placed the conclusion that [the officer] acted unreasonably in the[] circumstances 'beyond debate.'" Mullenix v. Luna, 136 S. Ct. 305, 309 (2015). Accordingly, officers are entitled to qualified immunity unless this court can "say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have perceived a sufficient threat and acted as [the officer] did." Id. at 310 (some alterations in original).

### 1. Unlawful Arrest

Safford's version of events, if believed by the jury, would establish a violation of his Fourth Amendment right to be free from unreasonable seizures. Arrests unsupported by probable cause

8

are unreasonable under the Fourth Amendment. Miller v. Prince George's Cty., 475 F.3d 621, 627 (4th Cir. 2007). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown, 278 F.3d at 367. Two factors govern this court's analysis of probable cause: (1) "the suspect's conduct as known to the officer" and (2) "the contours of the offense thought to be committed by that conduct." Id. at 368 (citations omitted).

Under Safford's version of events, which a reasonable jury could credit, a reasonable officer could not have believed that an offense had been or was being committed. The offense of arrest, labeled "Resisting officers," makes it a misdemeanor for any person to "willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office." N.C. Gen. Stat. § 14-223. Safford responded to Deputy Stewart's first request by telling him that if he moved he would fall. (Doc. 28-1 at 8.) Safford responded to Deputy Stewart's second request by telling him he was going to sit down. (Id.) Safford then began to sit down, and got "halfway" down before being grabbed by Deputy Stewart. (Id. at 8-9.) In other words, under Safford's version of events, he was unable to comply with the first order and Deputy Stewart seized him for arrest while he was visibly

9

complying with the second order. A reasonable officer could not believe that probable cause existed under these circumstances.

Under Safford's version of events, only a "plainly incompetent" officer[2] who "knowingly violates the law" could have believed that probable cause existed. Mullenix, 136 S. Ct. at 310. Complying with an order is the antithesis of the offense of resisting an officer's commands created by N.C. Gen. Stat. § 14-223. In fact, under North Carolina law, "merely speaking to, remonstrating with, or even criticizing an officer during the performance of his duties is not prohibited if done 'in an orderly and peaceable manner.'" Brooks v. N.C. Dep't of Corr., 984 F. Supp. 940, 955 (E.D.N.C. 1997) (quoting State v. Leigh, 278 N.C. 243, 251, 179 S.E.2d 708, 713 (1971)); Roberts v. Swain, 126 N.C. App. 712, 724, 487 S.E.2d 760, 768 (1997) (collecting cases). If such conduct does not constitute resisting, delaying, or obstructing, then it is clear that complying cannot. See Veney v. Ojeda, 321 F. Supp. 2d 733, 745-46 & n.22 (E.D. Va. 2004) ("[I]t is clear that a reasonable officer would have understood that there

---

[2] Stewart contends that he is entitled to more latitude because, unlike patrol officers, a courtroom bailiff is tasked with maintaining rules of order and decorum. (Doc. 34 at 20.) But even assuming this is true, Safford contends that he had announced his intention to sit and that he was in the process of doing so. (Doc. 28-1 at 7-9.) Stewart has not pointed to any policy or duty of a courtroom bailiff that justifies the arrest and removal of an individual who is visibly complying with the bailiff's orders. (See Doc. 34 at 20-21.) Therefore, any distinction between patrol officers and bailiffs is not determinative under Safford's version of events, which is admittedly disputed.

10

would be no probable cause to arrest an individual for obstruction of justice [in Virginia] if that individual, in the course of a traffic stop, was cooperative and complied fully with the officer's instructions. It is clearly established that an arrest in such circumstances would violate the Fourth Amendment." (collecting cases, including Wilson v. Kittoe, 337 F.3d 392, 403-04 (4th Cir. 2003) (construing North Carolina's and Virginia's obstruction statutes as "virtually identical"))).

### 2. Excessive Force

Safford's version of events, if believed by the jury, would also establish a violation of his Fourth Amendment right to be free from excessive force. Excessive force claims against law enforcement officers are analyzed under the Fourth Amendment's reasonableness standard. Graham v. Conner, 490 U.S. 386, 395 (1989). The question under the totality of the circumstances is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). In determining whether a reasonable officer on the scene would have used force, courts are to consider the following factors established by Graham: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. "The

11

'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.  Courts must consider "that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving." Id. at 397.  Courts are also instructed to focus "on the circumstances at the moment force was used and on the fact that officers on the beat are not afforded the luxury of armchair reflection." Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

Here, under Safford's version of events, the three Graham factors point toward a Fourth Amendment violation.  First, the severity of the crime at issue in this case is a misdemeanor and not severe.  Moreover, for the reasons noted above, if Safford is to be believed there was not even probable cause to conclude that the offense had been committed.  Second, although Safford's standing during court proceedings clearly constituted a disruption that warranted the deputy's attention and intervention, a reasonable officer would not have viewed Safford as posing an immediate threat to the safety of the officers or others.  Under Safford's version of events, Deputy Stewart faced a disabled man with a cane who had told him he was going to sit down and was in the process of complying with the order to sit down.  (Doc. 28-1 at 7-9.)  Safford denies ever cursing or pushing Deputy Stewart. (Id.)  Third, and for these same reasons, a reasonable officer

12

would not have viewed Safford as actively resisting arrest or attempting to evade arrest by flight. In light of these factors, and assuming Safford's version of events as this court must at this stage, it takes no second guessing of Deputy Stewart to conclude that jerking Safford up from his seat, forcing his arm behind his back up to his neck, and dragging him out of the courtroom constituted excessive force. (Id.) Finally, only a "plainly incompetent" officer who "knowingly violates the law" could have believed that the force used was justified under Safford's version of events. Mullenix, 136 S. Ct. at 310.

In sum, Safford's version of events, if believed, would establish that the force used was not justified in violation of Graham. (See Doc. 28-1 at 7-9.) It is clearly established and common sense that using the force used by Deputy Stewart to achieve the compliance of an already compliant and nonthreatening individual is unjustified. See Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992); Buonocore v. Harris, 65 F.3d 347, 356-57 (4th Cir. 1995); Eberhardt v. O'Malley, 17 F.3d 1023, 1028 (7th Cir. 1994) ("The easiest cases don't even arise."); Bartram v. Wolfe, 152 F. Supp. 2d 898, 903-904 (S.D. W. Va. 2001) ("Was it clearly established as objectively unreasonable in August 1998 to punch or otherwise batter a handcuffed suspect who was complying and cooperating with a law enforcement officer's instruction? Although one has difficulty finding a case on point for that

13

proposition, this is one of those rare instances where the question ineluctably leads to an affirmative answer."); Gray v. Torres, No. 08cv1380, 2009 WL 2169044, at *4 (D. Md. July 17, 2009); see also Brockington v. Boykins, 637 F.3d 503, 508 (4th Cir. 2011).

Accordingly, in light of the material factual disputes that remain in this case, Deputy Stewart is not entitled to qualified immunity on Safford's Fourth Amendment claim for unlawful arrest and excessive force. Swick v. Wilde, 529 F. App'x 353, 357–58 (4th Cir. 2013) (unpublished) (dismissing appeal for lack of jurisdiction where denial of qualified immunity was based solely on a dispute of material fact).[3]

**B. State-Law Individual Capacity Claims**

Safford asserts State-law claims against Deputy Stewart in his individual capacity for false arrest, false imprisonment, and battery. Deputy Stewart seeks summary judgment on these claims on the basis of public official immunity. Public official immunity does not protect officials from actions that were "corrupt, malicious or perpetrated outside and beyond the scope of official duties." Beck v. City of Durham, 154 N.C. App. 221, 230, 573 S.E.2d 183, 190 (2002) (quoting Locus v. Fayetteville State Univ.,

---

[3] Unpublished decisions of the Fourth Circuit are not ordinarily accorded precedential value but "are entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted)).

14

102 N.C. App. 522, 526, 402 S.E.2d 862, 865 (1991)). An action is malicious where it is "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Brown v. Town of Chapel Hill, 233 N.C. App. 257, 264, 756 S.E.2d 749, 755 (2014) (citations omitted). If the jury were to believe Safford's version of events, a finding of malice could be justified for Deputy Stewart's arrest and use of force against a disabled man who, after announcing his intent to comply, visibly attempted to do so. Accordingly, Deputy Stewart is not entitled to summary judgment on the basis of public official immunity.

**III. CONCLUSION**

For the reasons stated, Defendants' motion for summary judgment is denied. This conclusion reflects no judgment on any party (indeed Deputy Stewart denies many of the facts central to Safford's narrative) but reflects a record with materially conflicting versions of events that cannot be reconciled by objective evidence[4] or without weighing credibility, which this court is precluded from doing at this stage. Accordingly, it will be for the jury to determine whose version of the facts to credit.

---

[4] The video surveillance of the events that occurred outside of the courtroom is the only objective evidence in this case, and it does not capture the moments critical to this opinion. The court has viewed the video, but expresses no opinion as to whether it demonstrates that Safford resisted arrest. Defendants have not argued or provided authority for the proposition that an arrest and use of force, even if initially unjustified, can become justified once the suspect resists arrest. As a result, the court does not reach the issue.

15

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Doc. 28) is DENIED to the extent that it was not previously granted in this court's prior order (Doc. 46), with the caveat that the viability of any federal official capacity claim will be addressed after Plaintiff responds to Defendants' motion to strike (Doc. 48).

                                                     /s/    Thomas D. Schroeder
                                                United States District Judge

June 28, 2016